2011 UT App 222

**Tracy L. SOUTHWICK, individually; and Tracy L. Southwick and Vickie L. Southwick, in their capacity as trustees of the Southwick Family Trust, Plaintiffs, Appellants, and Cross-appellees,**

v.

**Phillip D. SOUTHWICK, individually and as trustee of the Don B. Southwick and Barbara P. Southwick Irrevocable Trust, Defendant, Appellee, and Cross-appellant.**

No. 20090861–CA.

Court of Appeals of Utah.

July 8, 2011.

Matthew G. Grimmer and Erin T. Middleton, Salt Lake City, for Appellants and Cross-appellees.

Stephen F. Noel and Garrett A. Walker, Ogden, for Appellee and Cross-appellant.

Before Judges THORNE, VOROS, and CHRISTIANSEN.

OPINION

THORNE, Judge:

¶ 1 Tracy L. Southwick appeals from the district court's final order determining that his interest in the Don B. Southwick and Barbara P. Southwick Irrevocable Trust (the Trust) was limited to a one-third share of property remaining in the Trust and that he was estopped from making any claims against the Trust or its trustee relating to distributions that occurred prior to the initiation of this action. Phillip D. Southwick, trustee of the Trust, cross appeals. We determine that Tracy effectively disclaimed his entire interest in the Trust in 1992, and accordingly we reverse the district court's final order and remand this matter for further proceedings.[1]

BACKGROUND

¶ 2 Don and Barbara, a married couple, formed the Trust in September 1989. Their son Phillip was one of three named beneficiaries of the Trust and has served as trustee since the Trust's formation. The other two original Trust beneficiaries were Tracy, who is Don's son from a prior marriage, and Robert Milner, who is Barbara's son from a prior marriage.

¶ 3 Don and Barbara divorced in November 1991. The divorce decree provided that Barbara was to become the sole beneficiary of the Trust and directed Phillip, as trustee, to do whatever was necessary to make Barbara the sole owner and beneficiary of the Trust's assets. Under the terms of the Trust, Don and Barbara could have directed Phillip to disperse to them all of the Trust's assets. However, rather than remove the assets from the Trust, the parties attempted to reform the existing Trust to conform to the requirements of Don and Barbara's divorce decree. To this end, Don and Barbara executed a joint release in December 1991, directing Phillip to "convey and transfer all of the assets located in said trust to Barbara P. Southwick as the sole beneficiary under the terms of [the Trust]."

---

1. Due to the common last name of the individuals involved in this matter, we refer to those individuals by their first names.

¶ 4 Barbara wanted the Trust to continue to serve as a vehicle to transfer assets to her sons Phillip and Robert upon her death. At Barbara's direction, the attorney who had drafted the Trust prepared a document (the Disclaimer) for Tracy to sign that purported to disclaim any interest that Tracy might have under the Trust. The Disclaimer identified the Trust and stated that Tracy "hereby renounces any claim he may have to any of the Trust Estate including income and/or principal, all cash including bank accounts, and all proceeds from life insurance policies." Tracy signed the Disclaimer on January 31, 1992, and Phillip accepted it as trustee on March 12, 1992.

¶ 5 Barbara died in February 2002. Some time after Barbara's death, Tracy and Phillip had an argument in which Tracy claimed a continuing interest in the Trust; Phillip disagreed. After the argument, in April 2002, Tracy wrote two letters to Phillip and Robert regarding the Trust. In an April 7 letter to Phillip, Tracy stated that he did not remember whether he had signed the Disclaimer, that he was not going to do anything about the Trust, and that Phillip and Robert could do whatever they wanted with the Trust assets. Tracy made essentially these same statements in an April 20 letter to Robert. Each letter also suggested, rhetorically, that neither Tracy nor anyone else would intentionally sign away his or her inheritance. Phillip nevertheless viewed Tracy's letters as a confirmation of the 1992 Disclaimer.

¶ 6 In March 2005, Phillip sold certain Trust property for $300,000 and divided the proceeds equally between himself and Robert as the remaining beneficiaries of the Trust. In January 2006, Tracy sued Phillip, alleging breach of fiduciary duty and seeking damages and other relief. Tracy also alleged that he had not signed the Disclaimer and that his signature on that document was forged. After a two-day bench trial, the district court ruled that Tracy had signed the Disclaimer in 1992 but that the Disclaimer was not legally effective because it did not strictly comply with the then-governing disclaimer statute. *See generally* Utah Code Ann. § 75-2-802 (Supp.1991) (the 1992 Disclaimer Statute). However, the district court also concluded that Phillip had reasonably relied on the Disclaimer and the other circumstances when he made the 2005 distributions. The district court therefore concluded that Tracy was estopped from asserting any damages claim resulting from the 2005 distribution but awarded Tracy a beneficial one-third interest in the Trust's remaining assets. Tracy and Phillip both appeal from the district court's final judgment.

## ISSUE AND STANDARD OF REVIEW

¶ 7 Tracy and Phillip raise multiple issues on appeal and cross-appeal, but we address only Phillip's argument that Tracy effectively disclaimed his entire interest in the Trust when he executed and delivered the Disclaimer. This argument hinges on the proper interpretation of the 1992 Disclaimer Statute, which is a question of law that we resolve giving no deference to the district court. *See generally Foothill Park, LC v. Judston, Inc.*, 2008 UT App 113, ¶ 4, 182 P.3d 924.

## ANALYSIS

¶ 8 The district court concluded that the Disclaimer was not legally effective because it did not strictly comply with the requirements of the 1992 Disclaimer Statute. On appeal, Phillip argues that the Disclaimer substantially complied with the statutory requirements and that it should be deemed sufficient to terminate Tracy's status as a beneficiary of the Trust. We agree with Phillip that the Disclaimer substantially complied with the requirements of the 1992 Disclaimer Statute and effectively renounced Tracy's interest in the Trust.

¶ 9 The 1992 Disclaimer Statute provided that a person with an interest in an instrument or contract, such as the Trust, could "disclaim in whole or in part the right of transfer to the person of any property or interest in it by delivering or filing a written disclaimer under this section." Utah Code Ann. § 75-2-802(1)(a). The statute further provided, "The disclaimer shall: (i) describe the property or interest in it disclaimed; (ii) declare the disclaimer and extent of it; (iii) be signed by the disclaimant; and (iv) state that the disclaimer is proper under Subsec-

tion (4), and was made within the required time limits." *Id.* § 75–2–802(1)(b). As these requirements suggest, the statute also placed time limits on the right to disclaim, *see id.* § 75–2–802(2)(a), and barred the right of disclaimer under certain enumerated circumstances, *see id.* § 75–2–802(4).

¶ 10 The district court, without further elaboration, ruled that Tracy's Disclaimer "did not strictly comply with" the 1992 Disclaimer Statute.[2] However, comparing the Disclaimer to the four requirements imposed by the 1992 Disclaimer Statute, it is clear that the Disclaimer did strictly comply with three of the statute's four requirements. As to the first two requirements, the Disclaimer identified the Trust and purported to renounce "any claim [Tracy] may have to any of the Trust Estate including income and/or principal." Thus, the Disclaimer identified both the property to be disclaimed and the extent of the purported disclaimer. *See* Utah Code Ann. § 75–2–802(1)(b)(i)–(ii); *Whitney v. Faulkner,* 2004 UT 52, ¶ 11, 95 P.3d 270 ("Faulkner's disclaimer is not facially defective; rather, it describes the interest to be disclaimed as Faulkner's interest in Jennie's trust and, through the use of the word 'all,' declares the extent of that purported disclaimer as total."). And, although Tracy disputed it at trial, the district court found that Tracy signed the Disclaimer, thereby satisfying the statute's third requirement. *See* Utah Code Ann. § 75–2–802(1)(b)(iii).

¶ 11 The remaining requirement was that the Disclaimer needed to state that it was "proper under Subsection (4) [of the statute], and was made within the required time limits." *See id.* § 75–2–802(1)(b)(iv). The Disclaimer clearly failed to satisfy this recitation requirement, as it made no mention of either section 75–2–802(4) or the time limits imposed by the statute. Therefore, the Disclaimer failed to strictly comply with the totality of the requirements imposed by the 1992 Disclaimer Statute. There is no argument on appeal, however, that the Disclaimer actually was untimely or barred under section 75–2–802(4). Phillip argues that the Disclaimer *substantially* complied with the

statute as a whole by identifying the Trust and Tracy's disclaimed interest and by bearing Tracy's signature.

¶ 12 We agree that this constitutes substantial compliance with the 1992 Disclaimer Statute and that the Disclaimer successfully terminated Tracy's interest in the Trust upon its execution and delivery in 1992. "[T]here is no universal rule of statutory construction to distinguish between statutes requiring strict or substantial compliance." *Aaron & Morey Bonds & Bail v. Third Dist. Court,* 2007 UT 24, ¶ 7, 156 P.3d 801. Generally, substantial compliance with a statutory provision is adequate when the provision is directory, meaning it goes " 'merely to the proper, orderly and prompt conduct of the business,' " *id.* (quoting *Kennecott Copper Corp. v. Salt Lake Cnty.,* 575 P.2d 705, 706 (Utah 1978)); when the result will nevertheless effectuate the policy behind the statute; and when using a substantial compliance standard will not result in prejudice. *See id.* By contrast, strict compliance is required when a provision affects substantive rights or when substantial compliance will result in prejudice. *See id.* ¶ 8; *Cache Cnty. v. Property Tax Div.,* 922 P.2d 758, 764 (Utah 1996) ("A designation is mandatory ... if it is 'of the essence of the thing to be done.' " (quoting *Kennecott Copper Corp.,* 575 P.2d at 706)). Thus, "[l]egislative intent, as discerned from the wording of the statute, and possible prejudice to the moving party must therefore be evaluated when deciding whether strict compliance is required." *Aaron & Morey Bonds & Bail,* 2007 UT 24, ¶ 9, 156 P.3d 801.

¶ 13 Turning first to the language of the 1992 Disclaimer statute, the legislature prefaced each of the four disclaimer requirements with the word "shall." *See* Utah Code Ann. § 75–2–802(1)(b). " '[S]hall' is generally presumed to indicate a mandatory requirement," *Aaron & Morey Bonds & Bail,* 2007 UT 24, ¶ 14 n. 2, 156 P.3d 801, but, on occasion, "it has also been interpreted as merely directory," *id.* Factors to be considered in this determination include whether the provision affects substantial rights and

**2.** A trial transcript is not a part of the record on appeal, and thus, if the district court did give any

further explanation of its strict compliance ruling at that time, that explanation is not before us.

whether the provision is necessary to effectuate the intent of the statute. *See Kennecott Copper Corp.*, 575 P.2d at 706–07.

¶ 14 Here, the first three requirements of section 75–2–802(1)(b) are likely mandatory, as they are both substantive in nature and effectuate the policy underlying the statute. The purpose of the statute is to allow for and govern the disclaimer of interests, and the identity of the interest, the extent of disclaimer, and the disclaimant's assent thereto are all " 'of the essence of the thing to be done.' " *Cache Cnty.*, 922 P.2d at 763 (quoting *Kennecott Copper Corp.*, 575 P.2d at 706); *see also Whitney*, 2004 UT 52, ¶¶ 11–14, 95 P.3d 270 (requiring disclaimants to "plainly identify what exactly is to be disclaimed" and rejecting the argument that substantial compliance with the statute's partial disclaimer provisions shielded the residual portion of the subject trust from creditors). In marked contrast, the fourth requirement is merely a recitation to be placed within the disclaimer, stating that it is "proper under Subsection (4), and was made within the required time limits." *See* Utah Code Ann. § 75–2–802(1)(b)(iv) (Supp.1991). We can ascertain no reason why an otherwise valid disclaimer that is in fact timely and not barred by section 75–2–802(4) should lack legal effect merely because it fails to assert its own timeliness and validity under the Disclaimer Statute.[3]

¶ 15 Further, we see little possibility of prejudice, particularly to disclaimants such as Tracy, in treating the fourth requirement of the 1992 Disclaimer Statute as directory rather than mandatory. The statute's timeliness and substantive requirements are either satisfied or they are not, regardless of whether a particular disclaimer asserts compliance therewith. *Cf. Whitney*, 2004 UT 52, ¶¶ 11–14, 95 P.3d 270 (holding that an otherwise facially valid disclaimer was nevertheless ineffective where it failed to account for the beneficiary's acceptance of property from the trust). Further, the recitation requirement would appear to be for the benefit not of the disclaimant, but of whoever might be accepting the disclaimer—in this case, Phil-

lip. *Cf. Tech–Fluid Servs., Inc. v. Gavilan Operating, Inc.*, 787 P.2d 1328, 1334 n. 8 (Utah Ct.App.1990) (stating that certain procedural rules relating to the redemption of property "were likely created for the benefit and protection of the sheriff, so that he may be guided in what to require to make certain that redemption is in order"). Although Phillip might have been justified in rejecting the Disclaimer in 1992 as noncompliant with the statute, he in fact accepted it, and both he and Barbara relied upon it to accomplish Barbara's intent to remove Tracy as a Trust beneficiary.

¶ 16 In light of both the nonsubstantive nature of the recitation requirement and a lack of prejudice—particularly to Tracy—created by omission of the recitation from the Disclaimer, as well as the Disclaimer's strict compliance with section 75–2–802(b)'s other requirements, we conclude that the Disclaimer substantively complied with the 1992 Disclaimer Statute and effectively renounced Tracy's interest in the Trust.

### CONCLUSION

¶ 17 The Disclaimer effectively renounced and disclaimed Tracy's interest in the Trust under the 1992 Disclaimer Statute. The district court's conclusion to the contrary is reversed, and this matter is remanded for such further proceedings as may remain necessary.

¶ 18 WE CONCUR: J. FREDERIC VOROS JR. and MICHELE M. CHRISTIANSEN, Judges.

---

3. Indeed, the legislature has since dropped the fourth disclaimer requirement altogether while retaining the first three nearly verbatim. *See* Utah Code Ann. § 75–2–801(3) (Supp.2010).