2014 UT App 193

# THE UTAH COURT OF APPEALS

SALT LAKE CITY CORPORATION,
Petitioner and Appellee,

*v.*

MARK HAIK,
Respondent and Appellant.

Opinion
No. 20130383-CA
Filed August 14, 2014

Third District Court, Salt Lake Department
The Honorable Keith A. Kelly
No. 120905667

Paul R. Haik, Attorney for Appellant

Margaret D. Plane and E. Russell Vetter, Attorneys
for Appellee

SENIOR JUDGE JUDITH M. BILLINGS authored this Opinion, in
which JUDGE MICHELE M. CHRISTIANSEN and SENIOR JUDGE
RUSSELL W. BENCH concurred.[1]

BILLINGS, Senior Judge:

¶1     Mark Haik appeals from the district court's grant of
summary judgment in favor of Salt Lake City Corporation (the
City). Haik argues that the district court lacked jurisdiction and
that the district court erroneously concluded that the records he
requested from the City are protected under the Government

---

1. The Honorable Judith M. Billings and the Honorable Russell W.
Bench, Senior Judges, sat by special assignment as authorized by
law. *See generally* Utah Code Jud. Admin. R. 11-201(6).

Records Access and Management Act (GRAMA), *see* Utah Code
Ann. §§ 63G-2-101 to -901 (LexisNexis 2011).[2] We affirm.


BACKGROUND

¶2　　In April 2012, Haik filed a records request with the City,
asking for copies of documents pertaining to the City's
employment of outside counsel in the 1990s. The City and an
attorney (Attorney) had a series of agreements (the Attorney
Employment Agreements), in which Attorney agreed to provide
legal advice to the City regarding the City's water-exchange
agreements with various irrigation companies. In his GRAMA
request, Haik specifically requested access to

> [a]ll records of advice or assistance given pursuant to
> the Attorney Employment Agreement[s] made as of
> September 16, 1992 between [the City] and
> [Attorney] and as amended as of March 29 and
> October 26, 1993; September 12, 1994, March 20, 1995,
> April 3, 1996, February 14, 1997, and June 20, 1997;
> which employment agreement and amendments are
> on file in the office of the City Recorder.

Because some records described in Haik's request consisted of
Attorney's reviews of the water-exchange agreements (the Opinion
Letters), the City refused to disclose those documents. In a letter,
the City informed Haik of its decision, stating,

> [These] records are not produced pursuant to Utah
> Code Annotated, Section 63G-2-204(16) (17) (18) (a)
> (b) (c) and (23) and revised under Section 63G-2-
> 305(16) subject to attorney client privilege (17)

---

2. Unless otherwise noted, we cite the GRAMA provisions and city
ordinances that were in effect at the time Haik filed his records
request.

records prepared for or by an attorney, consultant, surety, indemnitor, insurer, employee, or agent of a governmental entity for, or in anticipation of litigation or a judicial, quasi-judicial or administrative proceeding and (22) records concerning a governmental entity's strategy about imminent or pending litigation . . . .

The City's citation to the Utah Code, however, was in part erroneous.

¶3    In response to the City's decision, Haik appealed to the Salt Lake City Records Appeals Board (the Board). Haik argued to the Board that the City's citation to section 63G-2-204[3] was erroneous as it was not in effect at the time of his records request, that the withheld records were not prepared in anticipation of litigation or concerning litigation as required for protection under section 63G-2-305(16) and (17), and that the withheld records were not drafts as required for protection under section 63G-2-305(22). The Board agreed with Haik. The Board therefore determined that the withheld records were not protected under the cited sections of GRAMA.[4] The Board's decision indicated, "[A]ny party to this

3. Section 63G-2-204 is titled "Requests—Time limit for response and extraordinary circumstances" and sets forth how a person may request records as well as how and when a governmental entity shall respond to a GRAMA request. Utah Code Ann. § 63G-2-204 (LexisNexis 2011).

4. The Board determined that the City's reliance on its accurate citation to the amended version of the Utah Code was misplaced because the amended version did not apply to Haik's request. The Board further determined that the City's inaccurate citations constituted a failure to cite the statutory provisions supporting its denial as required by section 63G-2-205(2)(b), *see id.* § 63G-2-205(2)(b), and that the Opinion Letters were therefore not properly

(continued...)

proceeding may petition for review of the decision with the State Records Committee or District Court pursuant to Salt Lake City Code § 2.64.140(G) and Utah Code Ann. § 63G-2-403 . . . ."[5]

¶4    The City subsequently petitioned for judicial review of the Board's decision in the district court. The City moved for summary judgment, arguing that the Board was incorrect because the records Haik requested are protected by attorney–client privilege and as attorney work product under GRAMA. In support of its motion, the City provided affidavits from Attorney and from the City's director of public utilities (Director). Attorney and Director both averred that potential litigation over the water-exchange agreements led the City to retain Attorney, who reviewed the water-exchange agreements to which the City was a party. According to Director, the City received threats of litigation from upset citizens and their attorneys, as well as from companies. The City therefore asked Attorney specific questions about the water-exchange agreements and asked for legal advice and opinions about prospective litigation. Had litigation ensued, the City would have used Attorney's ideas, theories, and opinions in the litigation. The affidavits also provided evidence that Attorney's review of the agreements was not undertaken pursuant to any routine procedure or public requirement and that the City could be adversely affected by producing the Opinion Letters because the water-exchange agreements are still in effect.

---

4. (...continued)
withheld under the statutory provisions that were cited in the City's letter.

5. Section 2.64.140(G) of the Salt Lake City Code provided, "Any party to the proceeding before the board may petition for review of the board's decision by the state records committee as provided in section 63-2-403 of the act or the state district court." Salt Lake City, Utah, Code § 2.64.140(G) (2012).

¶5      In his opposition to the City's motion, Haik argued that the district court lacked jurisdiction, that the records at issue were not protected under GRAMA, and that disputed issues of material fact precluded summary judgment. Haik also raised objections to the affidavits, arguing that the affidavits were inadmissible under rules 401, 403, 602, 701, 802, and 1002 of the Utah Rules of Evidence.

¶6      The district court granted the City's summary judgment motion. The court first concluded that it had jurisdiction under GRAMA to review the Board's decision and overruled all of Haik's objections to the affidavits. The court then reasoned that the City's letter met the statutory requirements and adequately put Haik on notice of the grounds for the denial of his GRAMA request, notwithstanding the City's inaccurate citation to the Utah Code. The district court conducted an in camera review of the withheld records and determined that the records are protected under GRAMA because the records "are attorney work product and contain mental impressions, legal theories, and advice concerning anticipated litigation." (Citing Utah Code Ann. § 63G-2-305(17) (LexisNexis 2011).) Alternatively, the district court determined that the withheld records would be protected under the revised 2012 version of GRAMA, which exempts from disclosure "records that are subject to the attorney client privilege." *See* Utah Code Ann. § 63G-2-305(16) (LexisNexis Supp. 2012). Accordingly, the district court ruled that the City was not required under GRAMA to produce the requested records. Haik appeals.

ISSUES AND STANDARDS OF REVIEW

¶7      On appeal, Haik first argues that the district court did not have jurisdiction to consider the City's appeal from the Board's decision. "Whether the district court has jurisdiction is a question of law that we review for correctness, giving no deference to the lower court." *Salt Lake City v. Weiner*, 2009 UT App 249, ¶ 5, 219 P.3d 72 (citation and internal quotation marks omitted).

¶8 Next, Haik challenges the district court's grant of summary judgment, arguing that the court erroneously interpreted and applied GRAMA. "An appellate court reviews a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness and views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citations and internal quotation marks omitted). The issues Haik raises on appeal present questions of statutory interpretation. "We review matters of statutory construction for correctness." *Utah Dep't of Pub. Safety v. Robot Aided Mfg. Ctr., Inc.*, 2005 UT App 199, ¶ 6, 113 P.3d 1014. "To the extent our analysis requires us to interpret GRAMA, we look first to its plain language and interpret its terms in accord with their usual and accepted meanings." *Maese v. Tooele Cnty.*, 2012 UT App 49, ¶ 5, 273 P.3d 388 (citations and internal quotation marks omitted).

¶9 Last, Haik asserts that the district court exceeded its discretion in admitting the affidavits of Attorney and Director. "We review the district court's evidentiary rulings under an abuse of discretion standard." *Olson v. Olson*, 2010 UT App 22, ¶ 10, 226 P.3d 751. However, when the interpretation of an evidentiary rule is at issue, we review the district court's decision for correctness. *See Barrientos v. Jones*, 2012 UT 33, ¶ 8, 282 P.3d 50.

ANALYSIS

I. The District Court's Jurisdiction

¶10 Haik first argues that the district court lacked jurisdiction to hear the City's appeal from the Board's decision. Haik contends that only "requesters" are permitted to appeal an adverse decision under GRAMA and that the City had no right to petition for judicial review of the Board's adverse decision.

¶11   The district court interpreted GRAMA to provide that the City had the right to appeal the Board's decision. The district court relied on the Utah Code's instruction that "[a]ppeals of the decisions of the appeals boards established by political subdivisions shall be by petition for judicial review to the district court" and that "the conduct of the proceeding shall be in accordance with Sections 63G-2-402 and 63G-2-404."[6] Utah Code Ann. § 63G-2-701(6) (LexisNexis 2011). The district court determined that the City complied with the requirements for a petition for judicial review under section 63G-2-404(3) and that the City was "not prevented from filing an appeal merely because it is a governmental entity."

¶12   We are required to interpret the provisions of GRAMA to determine whether the City was entitled to petition the district court for judicial review of the Board's decision. In so doing, "[w]e look first to the plain language of the statutes to determine their meaning and to discern the intent of the legislature." *Berneau v. Martino*, 2009 UT 87, ¶ 12, 223 P.3d 1128. "We also examine the purpose of the statute . . . and its relation to other statutes." *Id.* (omission in original) (citation and internal quotation marks omitted). "Provisions within a statute are interpreted in harmony with other provisions in the same statute and with other statutes under the same and related chapters." *Id.* (citation and internal quotation marks omitted).

¶13   Section 63G-2-701 of GRAMA allows political subdivisions, like the City, to adopt ordinances and policies relating to records access, including denials and appeals. Utah Code Ann. § 63G-2-

---

6. Section 63G-2-402 provides that if the chief administrative officer of a governmental entity denies a records request, the requester may appeal the denial to the records committee or "petition for judicial review in district court as provided in Section 63G-2-404." Utah Code Ann. § 63G-2-402(1) (LexisNexis 2011). Because this case does not involve a chief administrative officer's denial of a records request, section 63G-2-402 does not apply.

701(1)(a). When a political subdivision elects to adopt such ordinances and policies, they must comply with the criteria set forth in section 63G-2-701. *Id*. § 63G-2-701(1)(b). One criterion is that "[t]he political subdivision . . . establish an appeals process for persons aggrieved by classification, designation or access decisions." *Id*. § 63G-2-701(4)(a). The ordinance or policy pertaining to the appeals process shall provide for

> (i)(A) an appeals board composed of the governing body of the political subdivision; or
> (B) a separate appeals board composed of members of the governing body and the public, appointed by the governing body; *and*
> (ii) the designation of a person as the chief administrative officer for purposes of determining appeals under Section 63G-2-401 of the governmental entity's determination.

*Id*. § 63G-2-701(4)(b) (emphasis added).

¶14 In this case, the City had ordinances in place regarding records access under GRAMA. Salt Lake City, Utah, Code §§ 2.64.010–.220 (2012). Under the City's ordinance governing appeals by persons aggrieved by the City's response to a record request, the City had an administrative appeals process involving the Board, which substantially complied with the requirements for "a separate appeals board composed of members of the governing body and the public, appointed by the governing body," *see* Utah Code Ann. § 63G-2-701(4)(b)(i)(B); Salt Lake City, Utah, Code § 2.64.140(A)(i) (2012). Thus, when the City refused to allow Haik access to the Opinion Letters, Haik appealed the City's decision on his GRAMA request to the Board. Once the Board reversed the City's decision, the City sought judicial review by the district court. Haik contends that the City's petition filed in the district court was not allowed under GRAMA.

¶15  However, the plain language of section 63G-2-701 of GRAMA broadly permits a district court to review the decision of an appeals board: "Appeals of the decisions of the appeals boards established by political subdivisions shall be by petition for judicial review to the district court. The contents of the petition for review and the conduct of the proceeding shall be in accordance with Section[] . . . 63G-2-404." Utah Code Ann. § 63G-2-701(6); *see also Khan v. Ogden City Records Review Bd.*, 2008 UT App 19U, para. 1 (per curiam) (reviewing a district court's grant of summary judgment on de novo review of the Ogden City Records Review Board's decision on the appellant's GRAMA request). Consequently, a petition for judicial review and the subsequent proceedings involving appeals from the decisions of an appeals board must comply with the requirements of section 63G-2-404, which is titled "Judicial review," Utah Code Ann. § 63G-2-404 (LexisNexis 2011).

¶16  Section 63G-2-404 sets forth some details for judicial review in GRAMA cases. Subsection 63G-2-404(1)(a) provides that "[a]ny party to a proceeding before the records committee may petition for judicial review by the district court of the records committee's order." *Id*. § 63G-2-404(1)(a). This subsection expressly allows "any party" to petition for judicial review from the decision of the State Records Committee. *Id. See generally id*. § 63G-2-103(24) ("'Records committee' means the State Records Committee created in Section 63G-2-501."); *id.* §§ 63G-2-501, -502 (detailing the creation and duties of the State Records Committee). Because the State Records Committee was not involved in this case, subsection 63G-2-404(1) does not directly apply here. However, it is persuasive that the statutory scheme intends to permit any party an opportunity to seek judicial review.

¶17  In support of his position that only a "requester" may seek judicial review of an appeals board's decision on a GRAMA request, Haik directs us to the next subsection of section 63G-2-404. That subsection states, "A requester may petition for judicial review by the district court of a governmental entity's

determination as specified in Subsection 63G-2-402(1)(b)." *Id.* § 63G-2-404(2)(a). Although the term "requester" is not defined under GRAMA, *see id.* § 63G-2-103 (providing definitions for the terms used in GRAMA), a requester presumably is a person who seeks to inspect a public record, *see generally id.* § 63G-2-201(1) (providing that "[e]very person has the right to inspect a public record"). Under the plain language of subsection 63G-2-404(2)(a), a requester may file a petition for judicial review of a governmental entity's determination when it was made by the chief administrative officer. *Id.* § 63G-2-404(2)(a). As a result, this subsection does not directly apply where, as here, a party instead petitions for judicial review from an appeals board established by a political subdivision.[7]

¶18  Our interpretation of section 63G-2-701 and GRAMA as a whole is consistent with other provisions of the Utah Code that permit either side to appeal from a decision made by an appeals board established by a political subdivision. For example, a municipal employee who is discharged may appeal the city's decision to a city appeal board. *Id.* § 10-3-1106(2)(a) (LexisNexis 2012). After an appeal board has taken final action, the appeal board's decision "may be reviewed by the Court of Appeals by filing with that court a petition for review." *Id.* § 10-3-1106(6)(a). In accordance with this provision, this court has reviewed such petitions filed by both sides to a proceeding before a city's appeal

---

7. The statute authorizing a city to establish an appeals process requires the city to provide for an appeals board *and* to "designat[e] . . . a person as the chief administrative officer for purposes of determining appeals under Section 63G-2-401 of the governmental entity's determination." *Id.* § 63G-2-701(4)(b). When section 63G-2-404 is read with this bifurcated structure in mind, subsection 63G-2-404(2)(a)'s language allowing only a "requester" to petition for judicial review makes sense where the appeal is from a decision of the chief administrative officer of the city, a decision that the city would have no need to appeal.

board—the city and the municipal employee. *See, e.g.,* *Hugoe v. Woods Cross City*, 2013 UT App 278, ¶ 1, 316 P.3d 979 (entertaining a petition for review of a decision of the Woods Cross City Employee Appeal Board filed by a terminated municipal employee); *Taylorsville City v. Taylorsville City Emp. Appeal Bd.*, 2013 UT App 69, ¶¶ 1, 18, 298 P.3d 1270 (addressing Taylorsville City's appeal from a decision by the Taylorsville City Employee Appeal Board and noting that "the legislature has authorized municipalities to create an appeal board or appoint a hearing officer to hear appeals from merit employees who have been terminated"). These cases also demonstrate that when a city establishes an appeal board, the city and the appeal board are not the same entity in subsequent proceedings.

¶19 In light of the broad language of section 63G-2-701—which does not state that only the requester may appeal the decision of an appeals board, Utah Code Ann. § 63G-2-701(6) (LexisNexis 2011), and under which the City had established "an appeals process for persons aggrieved by . . . access decisions," *see id*. § 63G-2-701(4)(a)—we conclude that any party to a proceeding before an appeals board created pursuant to section 63G-2-701(4)(b)(i) may petition for judicial review of the appeals board's decision. Because district courts have original jurisdiction in civil matters, *id*. § 78A-5-102(1) (2012), and because GRAMA provides that "[a]ppeals of the decisions of the appeals boards established by political subdivisions shall be by petition for judicial review to the district court,"[8] *id*. § 63G-2-701(6) (2011), we affirm the district court's conclusion that, like the parties who are denied access to records and have the right to judicial review, governmental entities, such as the City, also have

_____

8. The City's ordinance in effect at the time was consistent with the language of section 63G-2-701(6): "Any party to the proceeding before the board may petition for review of the board's decision by the state records committee as provided in section 63-2-403 of the act or the state district court." Salt Lake City, Utah, Code § 2.64.140(G) (2012).

the right to judicial review when seeking to assert legitimate protection of records. Accordingly, the district court properly exercised jurisdiction over the City's petition for judicial review of the Board's decision.[9]

## II. Summary Judgment

¶20    Next, Haik challenges the district court's grant of summary judgment, arguing that the court erroneously interpreted and applied GRAMA. Specifically, Haik argues that the district court erred in determining that the City's letter denying his GRAMA request met the statutory notice requirements, and that the Opinion Letters were protected records under GRAMA. Haik also argues that disputed issues of material fact precluded summary judgment in this case.

A.    The City's Letter Adequately Put Haik on Notice of the Grounds for the Denial.

¶21    Haik argues that the City's letter failed to meet the statutory requirements for denials of GRAMA requests because the statutory provisions cited in the letter were not accurate. The district court concluded that the City's letter contained a typographical error but nevertheless met the statutory requirements and adequately put Haik on notice of the grounds for the denial.

---

9. Haik also argues that the City was not permitted to petition for judicial review of the Board's decision because, as Haik asserts, the City is not a "person" under GRAMA. In determining that it had jurisdiction over this matter, the district court concluded that the City was both a "governmental entity" and a "person" under GRAMA's definitions of those terms, *see* Utah Code Ann. § 63G-2-103(11), (17) (LexisNexis 2011). However, because the district court's jurisdictional ruling did not depend on the definition of governmental entity or person, we do not address this argument.

¶22     Under GRAMA, a governmental entity denying a GRAMA request in whole or in part shall provide notice of the denial to the requester. Utah Code Ann. § 63G-2-205(1) (LexisNexis 2011). As required by statute, the notice of denial shall contain (i) "a description of the record or portions of the record to which access was denied," (ii) "a statement that the requester has the right to appeal the denial to the chief administrative officer of the governmental entity," and (iii) "the time limits for filing an appeal" and contact information for the chief administrative officer. *Id*. § 63G-2-205(2). Additionally, the statute requires the notice of denial to include (iv) "citations to the provisions of [GRAMA], court rule or order, another state statute, federal statute, or federal regulation that exempt the record or portions of the record from disclosure, provided that the citations do not disclose private, controlled, or protected information or information exempt from disclosure under Subsection 63G-2-201(3)(b)." *Id*. § 63G-2-205(2)(b).

¶23     Although GRAMA does not state the consequences to be applied if the governmental entity does not strictly comply with these notice requirements, *see id*. § 63G-2-205,

> [g]enerally, substantial compliance with a statutory provision is adequate when the provision is directory, meaning it goes merely to the proper, orderly and prompt conduct of the business; when the result will nevertheless effectuate the policy behind the statute; and when using a substantial compliance standard will not result in prejudice.

*Southwick v. Southwick*, 2011 UT App 222, ¶ 12, 259 P.3d 1071 (citations and internal quotation marks omitted). "By contrast, strict compliance is required when a provision affects substantive rights or when substantial compliance will result in prejudice." *Id*. "Thus, '[l]egislative intent, as discerned from the wording of the statute, and possible prejudice to the moving party must therefore be evaluated when deciding whether strict compliance is required.'"

*Id.* (alteration in original) (quoting *Aaron & Morey Bonds & Bail v. Third Dist. Court*, 2007 UT 24, ¶ 9, 156 P.3d 801).

¶24    The language of section 63G-2-205 indicates that the notice "shall contain" certain information, including a citation to the provisions that exempt the withheld records from disclosure. Utah Code Ann. § 63G-2-205(2). "'[S]hall' is generally presumed to indicate a mandatory requirement, [but] it has also been interpreted as merely directory." *Aaron & Morey*, 2007 UT 24, ¶ 14 n.2. The language of the statute evidences a legislative intent to ensure that those whose GRAMA requests are denied receive adequate notice of the basis for the governmental entity's refusal to provide access to certain records. We interpret section 63G-2-205 to call for substantial compliance with the notice requirements, which are met when the notice of denial provides enough information for a requester to understand the reasons for the governmental entity's decision, provided that the requester is not prejudiced by the governmental entity's failure to strictly comply with the requirements.

¶25    In this case, the City responded to Haik's GRAMA request with a letter that the district court deemed to be in compliance with three of the requirements under section 63G-2-205. The City's letter included a list describing the withheld records and stated,

> [These] records are not produced pursuant to Utah Code Annotated, Section 63G-2-204(16) (17) (18) (a) (b) (c) and (23) and revised under Section 63G-2-305(16) subject to attorney client privilege (17) records prepared for or by an attorney, consultant, surety, indemnitor, insurer, employee, or agent of a governmental entity for, or in anticipation of litigation or a judicial, quasi-judicial or administrative proceeding and (22) records concerning a governmental entity's strategy about imminent or pending litigation . . . .

However, the City's letter did not strictly comply with the remaining requirement, because it did not provide *accurate* "citations to the provisions of [GRAMA], court rule or order, another state statute, federal statute, or federal regulation that exempt the record or portions of the record from disclosure." Utah Code Ann. § 63G-2-205(2)(b). As the district court put it, the reference to section 63G-2-204 in the City's letter is "clearly incorrect" because that section addresses "Requests–Time limit for response and extraordinary circumstances," *id*. § 63G-2-204. The City's letter should have cited section 63G-2-305, which describes the types of records that are protected, *id*. § 63G-2-305.

¶26    Despite the City's typographical error in citing the statutes that exempted the Opinion Letters from disclosure, we agree with the district court's ultimate conclusion that the City put Haik on notice of the grounds for the denial of his GRAMA request. While the numbers of the statutory provisions cited as the basis for the City's denial are incorrect, the substance of the City's letter is accurate and sufficient to put Haik on notice that the City did not allow him to access the Opinion Letters because they were "subject to attorney client privilege," "records prepared for or by an attorney . . . for, or in anticipation of litigation," and "records concerning a governmental entity's strategy about imminent or pending litigation." The City's letter also informed Haik that he had "requested records of '[advice] or assistance' provided by [Attorney]," that Attorney's firm "has represented the City in various matters of litigation," and that the City therefore did "not include[] records concerning these matters." Thus, the City substantially complied with the GRAMA requirements for a notice of denial. In addition, Haik has not demonstrated that he was prejudiced in any way by the typographical error in the City's notice of denial. We therefore affirm the district court's conclusion that the City adequately put Haik on notice of the reasons it denied his GRAMA request.

B.     The Withheld Records Are Protected Under GRAMA.

¶27     Haik argues that the district court erred in applying GRAMA to determine that the Opinion Letters are protected records. Haik contends that the district court retroactively applied the 2012 version of GRAMA instead of the 2011 version in effect when he filed his GRAMA request. He further contends that under the 2011 version of GRAMA, the Opinion Letters did not qualify as protected records because they were not "prepared by or on behalf of a governmental entity *solely* in anticipation of litigation." *See* Utah Code Ann. § 63G-2-305(16) (LexisNexis 2011) (emphasis added).

¶28     GRAMA states that "[e]very person has the right to inspect a public record" and that "[a] record is public unless otherwise expressly provided by statute." *Id.* § 63G-2-201(1)–(2). Included among those records that are not public are "record[s] that [are] private, controlled, or protected under Sections 63G-2-302, 63G-2-303, 63G-2-304, and 63G-2-305." *Id*. § 63G-2-201(3)(a). Section 63G-2-305 sets forth the types of records that are protected under GRAMA and generally includes records prepared in anticipation of litigation. *See id*. § 63G-2-305.

¶29     In this case, the district court determined that the City's letter asserted that the Opinion Letters were withheld as protected under section 63G-2-305(17), which exempts from disclosure "records disclosing an attorney's work product, including the mental impressions or legal theories of an attorney or other representative of a governmental entity concerning litigation," *id*. § 63G-2-305(17). Based on the district court's in camera review of the Opinion Letters, the court determined that "it is clear that [the Opinion Letters] concern contracts and that there were concerns about litigation." Furthermore, the district court relied on the undisputed facts and the City's affidavits stating that the records contained "mental impressions and legal theories of an attorney concerning anticipated litigation." The district court therefore concluded that the Opinion Letters were attorney work product

and were protected under section 63G-2-305(17). In the alternative, the district court ruled that the Opinion Letters were protected under the 2012 version of section 63G-2-305(16), which protects records "subject to the attorney client privilege," *see id*. § 63G-2-305(16) (Supp. 2012).

¶30    Haik argues that the district court erred by applying section 63G-2-305(16) to the facts of this case. He contends that the Opinion Letters were not prepared solely in anticipation of litigation and that the district court applied the broad language of the 2012 version of section 63G-2-305(16) to hold that the Opinion Letters were subject to attorney–client privilege. *Compare id*. § 63G-2-305(16) (2011) (exempting from disclosure "records prepared by or on behalf of a governmental entity solely in anticipation of litigation that are not available under the rules of discovery"), *with id*. § 63G-2-305(16) (Supp. 2012) (exempting from disclosure "records that are subject to the attorney client privilege").

¶31    But while we accept Haik's contention that the 2011 version of GRAMA applies in this case, we are not persuaded that the district court erred in determining that the Opinion Letters are protected attorney work product under the 2011 version of GRAMA. Subsection 63G-2-305(17) protects "records disclosing an attorney's work product, including the mental impressions or legal theories of an attorney or other representative of a governmental entity concerning litigation." *Id*. § 63G-2-305(17) (2011). For this exemption to apply, "the asserting party must show that the documents or materials were prepared in anticipation of litigation by or for a party or that party's representative." *Southern Utah Wilderness Alliance v. Automated Geographic Reference Ctr*., 2008 UT 88, ¶ 29, 200 P.3d 643 (citation and internal quotation marks omitted). The undisputed facts indicate that the Opinion Letters addressed the water-exchange agreements with which the City had concerns about litigation. Attorney's and Director's affidavits establish that the Opinion Letters were in response to threats of litigation and detailed Attorney's legal ideas, theories, opinions, and advice about prospective litigation. The Opinion Letters are

therefore "records disclosing an attorney's work product, including the mental impressions or legal theories of an attorney . . . concerning litigation." Utah Code Ann. § 63G-2-305(17). As such, the district court did not err in concluding that the Opinion Letters were protected from disclosure under GRAMA.

C.      There Were No Disputed Issues of Material Fact.

¶32     Haik next argues that disputed issues of material fact should have precluded the district court from granting summary judgment to the City. In particular, Haik contends that the public records of payments made to Attorney indicate that the primary purpose of Attorney's employment was to provide contract review rather than to prepare for anticipated litigation. According to Haik, the district court improperly weighed the evidence by relying on the City's affidavits to conclude that undisputed facts showed that the Opinion Letters were generated in anticipation of litigation.

¶33     Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). After a party moving for summary judgment shows that there is no genuine issue of material fact, the burden shifts to the nonmoving party "to identify contested material facts." *Orvis v. Johnson*, 2008 UT 2, ¶ 10, 177 P.3d 600. "[I]t only takes one sworn statement under oath to dispute the averments on the other side of the controversy and create an issue of fact." *Draper City v. Estate of Bernardo*, 888 P.2d 1097, 1101 (Utah 1995) (citation and internal quotation marks omitted).

¶34     In opposing the City's motion for summary judgment before the district court, Haik made evidentiary objections to Attorney's and Director's affidavits, and he offered statements of additional facts. However, even construing these additional facts in the light most favorable to Haik, these additional facts did not create

disputed issues of material fact. For example, Haik provided evidence of an October 8, 1992 order from the Third District Court that dismissed a case brought by several irrigation companies against the City. Contrary to Haik's argument that this order of dismissal demonstrates that the City did not face imminent litigation, this order shows that the City was threatened with litigation. Likewise, on appeal, Haik points us to facts that do not create a disputed issue of material fact. Attorney's payment records indicate that Attorney analyzed the water-exchange agreements. However, those records do not dispute the averments in the City's affidavits that Attorney's reviews were done in anticipation of litigation and that the Opinion Letters contained Attorney's mental impressions and advice regarding potential litigation. Because Haik has not demonstrated contested material facts, the district court did not err in concluding that no genuine issue of material fact existed that would preclude summary judgment.

¶35 In sum, the district court properly concluded that the City's typographical error in citing the incorrect statutory provision did not render the City's notice inadequate, that the Opinion Letters were protected records under GRAMA, and that there were no disputed issues of material fact. Accordingly, the district court did not err in granting summary judgment to the City.

III. Evidentiary Rulings

¶36 Finally, Haik contends that the district court exceeded its discretion in overruling his evidentiary objections to the affidavits attached in support of the City's motion for summary judgment. *See generally* Utah R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."). In his brief to this court, Haik identifies the portions of the City's affidavits which he claims are inadmissible and broadly asserts that Director and Attorney lacked personal

knowledge and that the statements are irrelevant and inadmissible hearsay.

¶37    Our rules of appellate procedure require that the appellant's brief "contain the contentions and reasons of the appellant with respect to the issues presented, . . . with citation to the authorities, statutes, and parts of the record relied on." Utah R. App. P. 24(a)(9). "While failure to cite to pertinent authority may not always render an issue inadequately briefed, it does so when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court." *State v. Thomas*, 961 P.2d 299, 305 (Utah 1998). When an appellant's overall analysis is so lacking, an appellant does not meet its burden of persuasion on appeal. *See Salt Lake Cnty. v. Butler, Crockett & Walsh Dev. Corp.*, 2013 UT App 30, ¶ 37 n.5, 297 P.3d 38.

¶38    With regard to Haik's arguments contesting the admissibility of the City's affidavits, Haik has not met his burden of persuasion on appeal. By failing to even include citations to and discussions of the Utah Rules of Evidence and other pertinent authority, Haik's appellate brief does not engage in a meaningful analysis of the issues he raises and the application of the law to his case. "When a brief fails to cite relevant legal authority or provide any meaningful analysis regarding [an] issue, this court will not consider [the] appellant's argument." *In re S.A.*, 2001 UT App 308, ¶ 23, 37 P.3d 1172 (first alteration in original) (citation and internal quotation marks omitted). We therefore affirm the district court's rulings on Haik's objections to the City's affidavits without reaching the merits of those rulings.


CONCLUSION

¶39    The district court properly exercised jurisdiction over the City's petition for judicial review of the Board's decision. The district court did not err in granting summary judgment to the City because the withheld records are protected under GRAMA. Finally,

we affirm the district court's rulings on Haik's evidentiary objections to the affidavits the City filed in support of its motion for summary judgment.

———